FILED

OCT 15 2020

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *jtedford@DanningGill.com*
2  ZEV SHECHTMAN (State Bar No. 266280)
   *zs@DanningGill.com*
3  MICHAEL G. D'ALBA (State Bar No. 264403)
   *mdalba@DanningGill.com*
4  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  Attorneys for Debtor and Debtor in Possession
   Jaguar Distribution Corp.

8

ENTERED

OCT 15 2020

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11             **SAN FERNANDO VALLEY DIVISION**

12

13  In re                              Case No. 1:20-bk-11358-MB

14  JAGUAR DISTRIBUTION CORP.,         Chapter 11

15         Debtor.                     **ORDER GRANTING DEBTOR'S
                                        MOTION FOR ORDER (1) APPROVING**
16                                     **DEBTOR'S SALE OF SUBSTANTIALLY
                                        ALL OF ITS ASSETS, (2) AUTHORIZING**
17                                     **THE DEBTOR TO ASSUME AND
                                        ASSIGN EXECUTORY CONTRACTS,**
18                                     **(3) DETERMINING THAT THE BUYER
                                        IS A GOOD FAITH PURCHASER, AND**
19                                     **(4) WAIVING THE 14-DAY STAY**

20                                     Date:   October 9, 2020
                                       Time:   9:00 a.m.
21                                     Place:  Courtroom 303
                                               21041 Burbank Boulevard
22                                             Woodland Hills, CA 91367

23

24       On October 9, 2020, the Court heard and considered the *Motion for Order (1) Approving*

25  *Debtor's Sale of Substantially All of Its Assets, (2) Authorizing the Debtor to Assume and Assign*

26  *Executory Contracts, (3) Determining That the Buyer Is a Good Faith Purchaser, and (4) Waiving*

27  *the 14-Day Stay* (the "**Motion**") filed by debtor and debtor in possession Jaguar Distribution Corp.

28  (the "**Debtor**"), the Honorable Martin R. Barash, United States Bankruptcy Judge, presiding. John

1618385.4  26969                         1

1   N. Tedford, IV, and Zev Shechtman of Danning, Gill, Israel & Krasnoff, LLP, appeared on behalf

2   of the Debtor; Victor A. Sahn of SulmeyerKupetz, a Professional Corporation, appeared on behalf

3   of the Official Committee of Unsecured Creditors (the "**Committee**"); Keith C. Owens of Fox

4   Rothschild LLP appeared on behalf of Celsius Entertainment Ltd. ("**Celsius**") and Embankment

5   Films Limited ("**Embankment**"); Kevin McBride of McBride Law, PC, appeared on behalf of

6   Studio 100 Film, GmbH ("**Studio 100**"); Steven M. Berman of Shumaker, Loop & Kendrick, LLP,

7   appeared on behalf of AMBI Exclusive Acquisition Co., LLC ("**AMBI**"); and all other appearances

8   were as noted on the record at the hearing.

9          The Court having considered the Motion and the evidence submitted therewith (*docket no.*

10  *71*), the Debtor's notice of the Motion (*docket no. 72*), the supplemental Declaration of James

11  Wong (*docket no. 98*), responses filed by the Committee (*docket no. 88*), Celsius (*docket no. 99*),

12  and Embankment (*docket no. 100*), Studio 100's opposition (*docket no. 89*), the Debtor's reply to

13  Studio 100's opposition (*docket no. 106*), Studio 100's withdrawal of its opposition without

14  prejudice (*docket no. 120*), AMBI's opposition (*docket no. 101*), the Debtor's reply to AMBI's

15  opposition (*docket no. 105*), AMBI's withdrawal of its opposition without prejudice (*docket no.*

16  *121*), and the Debtor's *Report Re Qualified Overbid Received and Proposed Overbid Procedures*

17  (*docket no. 122*), having found that notice of the Motion and the hearing was adequate and proper,

18  there being no oppositions objecting to the Debtor's characterization of distribution agreements as

19  non-executory contracts (subject to the reservation of rights by Celsius, Embankment, Studio 100,

20  and AMBI (collectively the "**Objecting Licensors**"), as to which the Court has not made a finding

21  regarding the executory or non-executory nature of their distribution agreements), having heard the

22  statements of counsel and others at the hearing, having conducted an auction at the hearing, having

23  determined that Purchaser (defined below) is a good faith purchaser within the meaning of 11

24  U.S.C. § 363(m) and is entitled to the full protection of that provision in respect to the transaction

25  approved hereby, having determined that the consideration to be paid by the Purchaser (a) is fair

26

27

28

and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets,[1] (c) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration for the asset being sold, and for good cause appearing, it is

**ORDERED THAT:**

1. The Motion is granted.

2. The Third Amended Asset Purchase Agreement between the Debtor and Ricochet Digital Media, LLC ("**Purchaser**" or "**Ricochet**"), attached as Exhibit "1" hereto (the "**Agreement**"), and the Debtor's proposed sale of substantially all of the Debtor's assets contemplated in the Agreement (the "**Sale Transaction**"), is approved.

3. If Ricochet fails to close the Sale Transaction for any reason on or before the Closing Date, the Court hereby approves a sale of the Acquired Assets to The Forest Road Company, LLC, or its designee ("**Forest Road**") as a backup bidder on the same material terms and conditions set forth in the Agreement, except that the payment to be made pursuant to Section 6(a)(i) of the Agreement shall be twenty thousand dollars ($20,000.00). In that event, (a) the Debtor is authorized to enter into an asset purchase agreement with Forest Road that is substantially in the same form as the Agreement, (b) all references below to the Agreement shall refer to the asset purchase agreement between the Debtor and Forest Road, (c) all references below to Purchaser shall refer to Forest Road, and (d) other provisions of this order regarding the Sale Transaction remain the same.

4. Pursuant to 11 U.S.C. § 363, the Debtor is authorized to sell, transfer and assign to Purchaser all of the Debtor's right, title and interest in, to and under the Acquired Assets pursuant to the terms and conditions of the Agreement; *provided*, *however*, the Debtor is not authorized to sell, transfer and assign to Purchaser any right, title and interest of the Debtor in, to and under the assets that have been or will be designated by Purchaser as Excluded Assets. Pursuant to Section

---

[1] Capitalized terms not defined in this order have the same meaning ascribed to them in the Third Amended Asset Purchase Agreement attached as Exhibit "1" hereto.

1  4(a) of the Agreement, Ricochet may not redesignate any asset listed in Exhibit "B" to the

2  Agreement as an Acquired Asset without the express written consent of the applicable licensor.

3       5.     Except as to the Objecting Licensors, any and all parties to distribution agreements

4  and any other agreements to be sold, transferred and assigned to Purchaser are deemed to consent

5  to the sale, transfer and assignment of their agreements to Purchaser, and are forever barred and

6  estopped from seeking or requiring payment from the Debtor or Purchaser of any amount required

7  to "cure" defaults that exist under such agreements as of the Closing Date.  Nothing in this

8  paragraph is intended to or shall be construed as barring or estopping any creditor from filing a

9  proof of claim in the Debtor's case and seeking payment of such claim in accordance with 11

10  U.S.C. §§ 501-502, Federal Rules of Bankruptcy Procedure 3001-3003, or other applicable law or

11  procedure.

12       6.     The Debtor's sale of the Acquired Assets to Purchaser shall be free and clear of any

13  and all liens, claims and interests in the Acquired Assets.

14       7.     Neither Purchaser nor any of its affiliates, as a result of any action taken in

15  connection with the Agreement, consummation of the Sale Transaction, or the transfer of the

16  Acquired Assets, shall be deemed to (a) be a legal successor to the Debtor, (b) have, *de facto* or

17  otherwise, merged or consolidated with or into the Debtor, or (c) be an alter ego or a mere

18  continuation or substantial continuation of the Debtor or the enterprise of the Debtor.  Except as

19  expressly provided in the Agreement, neither Purchaser nor any of its affiliates shall have any

20  responsibility for (a) any liability or other obligation of the Debtor or related to the Acquired

21  Assets, or (b) any claims that have been or may be asserted against the Debtor or the Debtor's

22  estate.

23       8.     Notwithstanding anything in this order to the contrary, the Debtor is not at this time

24  authorized to sell, transfer or assign to Ricochet any distribution agreement, or similar or related

25  agreements, and rights thereunder, between the Debtor and AMBI.  If (a) the Debtor desires to sell,

26  transfer and/or assign any such agreement, and rights thereunder, to Ricochet, and (b) AMBI

27  consents to such sale, transfer and/or assignment, then the Debtor and AMBI may file a stipulation

28  requesting an order authorizing the Debtor to sell, transfer and/or assign such agreement(s), and

1   rights thereunder, to Ricochet as an Acquired Asset under the Agreement.  If AMBI does not

2   consent, the Debtor may file a motion (a "**Supplemental Motion**") for authority to sell, transfer

3   and/or assign such agreement(s) and rights thereunder to Ricochet, subject to the reservation of

4   rights retained by AMBI to object to any such sale or assignment of such agreements and rights

5   thereunder.  A Supplemental Motion filed pursuant to this paragraph must be filed no later than 10

6   days after the Closing Date.  If the Supplemental Motion is granted, the agreement(s) and rights

7   thereunder subject to the Supplemental Motion shall be deemed an Acquired Asset under the

8   Agreement.

9          9.      Notwithstanding anything in this order to the contrary, the Debtor is not at this time

10  authorized to sell, transfer or assign to Forest Road any distribution agreement, or similar or related

11  agreements, and rights thereunder, between the Debtor and any of the Objecting Licensors.  If

12  (a) Ricochet fails to close the Sale Transaction for any reason on or before the Closing Date,

13  (b)  the Debtor desires to sell, transfer and/or assign any such agreement, and rights thereunder, to

14  Forest Road, and (c) an Objecting Licensor consents to such sale, transfer and/or assignment, then

15  the Debtor and the consenting Objecting Licensor may file a stipulation requesting an order

16  authorizing the Debtor to sell, transfer and/or assign any such agreement(s), and rights thereunder,

17  to Forest Road as an Acquired Asset under the Agreement.  If an Objecting Licensor does not

18  consent, the Debtor may file a Supplemental Motion for authority to sell, transfer and/or assign

19  such agreement(s) and rights thereunder to Forest Road, subject to the reservation of rights retained

20  by each of the Objecting Licensors to object to any such sale or assignment of such agreements and

21  rights thereunder.  A Supplemental Motion filed pursuant to this paragraph must be filed no later

22  than 10 days after the Debtor has knowledge or notice that Ricochet is unable or unwilling to close

23  by the Closing Date and shall be set for hearing on regular notice.  If the Supplemental Motion is

24  granted, the agreement(s) and rights thereunder subject to the Supplemental Motion shall be

25  deemed an Acquired Asset under the Agreement.

26         10.     Purchaser shall be entitled to all protections afforded to good faith purchasers under

27  11 U.S.C. § 363(m).  The reversal or modification on appeal of the authorization provided herein to

28

1  consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of

2  the Agreement, and shall not permit the unwinding of the Sale Transaction.

3        11.    The Debtor is authorized to take such further actions and execute such documents as

4  it believes to be necessary and appropriate to close the sale of the Acquired Assets to Purchaser.

5        12.    This Court retains jurisdiction with respect to all matters arising from or related to

6  the interpretation, implementation and enforcement of the terms and provisions of this order, the

7  Agreement, and any agreements entered into by the Debtor and Purchaser in connection with or

8  related to the Sale Transaction.

9        13.    This order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

10  Notwithstanding any provision in Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d),

11  (a) the terms of this order shall be immediately effective and enforceable upon its entry, (b) the

12  Debtor is not subject to any stay of this order or in the implementation, enforcement or realization

13  of the relief granting in this order, and (c) the Debtor and Purchaser may, in their discretion and

14  without further delay, take any action and perform any act authorized under this order.

15        14.    Except as otherwise provided herein, nothing contained in this order or the

16  Agreement shall impair, amend, modify, release, waive or otherwise affect the rights, remedies or

17  claims of Celsius, Embankment and Studio 100 under applicable law, as their respective

18  distribution agreements and any other related agreements and rights thereunder have been

19  designated by Ricochet as Excluded Assets.

20                          # # # # #

21

22

23  10/15/2020    *Mark R. Barash*

24                   *U.S. Bankruptcy Judge*

25

26

27

28

# EXHIBIT 1

(Third Amended Asset Purchase Agreement)

## THIRD AMENDED
## ASSET PURCHASE AGREEMENT

This Third Amended Asset Purchase Agreement (this "**Agreement**") is made by and between Jaguar Distribution Corp. ("**Jaguar**" or "**Seller**"), on the one hand, and Ricochet Digital Media, LLC ("**Ricochet**" or "**Purchaser**"), on the other hand, for the sale and purchase of substantially all of the assets of Jaguar on the terms and conditions set forth herein. Purchaser and Seller are referred to, collectively, as the "**Parties**" and each, individually, as a "**Party**." This amended Agreement is dated October 13, 2020, and supersedes and replaces the Parties' Asset Purchase Agreement dated July 7, 2020, Amended Asset Purchase Agreement dated July 29, 2020, and Second Amended Asset Purchase Agreement dated October 1, 2020.

## RECITALS

A.    Jaguar's line of business includes the distribution of theatrical and nontheatrical motion picture films to airlines and cruise ship companies. Jaguar's assets include intellectual property, licensing rights pursuant to film distribution agreements, accounts receivable, and accounting records.

B.    A list of Jaguar's active film titles as of July 28, 2020 is reflected in Exhibit "A" hereto (the "**Titles List**"). The various Kew Media Distribution ("**Kew**") titles on the Titles List may not be available or may be subject to termination based on Kew's financial condition, as indicated on the footnote to the Titles List.

C.    On July 31, 2020 (the "**Petition Date**"), Jaguar filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"), case no. 1:20-bk-11358-MB (the "**Bankruptcy Case**").

D.    On or about July 7, 2020, the Parties entered into an *Asset Purchase Agreement*. On or about July 29, 2020, the Parties entered into an *Amended Asset Purchase Agreement*. Pursuant to those prior agreement(s), Purchaser deposited $45,000 in escrow (the "**Deposit**"), with Danning, Gill, Israel & Krasnoff, LLP (Seller's counsel) serving as escrow holder.

E.    On August 24, 2020, the Bankruptcy Court entered a final order (the "**Sale Procedures Order**") granting Jaguar's motion for approval of procedures in connection with its proposed sale of the Acquired Assets (defined below). On September 11, 2020, Jaguar filed a motion for approval of its proposed sale of the Acquired Assets to Purchaser, subject to overbids (the "**Sale Motion**"). The Sale Motion was heard on October 9, 2020 (the "**Sale Hearing**").

F.    After an auction held during the Sale Hearing, the Court approved Seller's proposed sale of the Acquired Assets to Purchaser on the terms set forth in this Agreement.

G.    For purposes of this Agreement:

(1)    "**Licensor**" means a party with whom Jaguar entered into a *Distribution Agreement* or has a similar agreement under which Jaguar obtained the right to license and distribute a motion picture or television program(s) (a "**Picture**");

(2)    regardless of its form or title, "**Distribution Agreement**" refers to an agreement under which Jaguar obtained the right to license and distribute a Picture;

(3)    "**Pre-Closing Accounts Receivable**" is money (a) owed to Jaguar by third parties (including but not limited to airlines, cruise ship companies, or content service providers) from exhibition of a Picture **and** (b) booked as an asset on Jaguar's balance sheet as of the Closing Date (defined below);

(4)    "**Post-Closing Accounts Receivable**" is money (a) owed to Jaguar by third parties from exhibition of a Picture prior to the Closing Date and (b) not yet booked as an asset on Jaguar's balance sheet as of the Closing Date;

(5)    "**New Accounts Receivable**" is money owed to Purchaser by third parties from the marketing, exploitation, promotion, distribution and exhibition of a Picture after the Closing Date; and

(6)    "**Collected Accounts Receivables**" means all Pre-Closing Accounts Receivables and Post-Closing Accounts Receivables actually collected by Purchaser after the Closing Date.

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties hereby agree as follows:

## AGREEMENT

1.    Court Approval Required.  This Agreement is subject to the approval of the Bankruptcy Court.  The Bankruptcy Court's order approving this Agreement is referred to herein as the "**Sale Order**."

2.    Acquired Assets.  Seller agrees to sell, transfer and assign to Purchaser, and Purchaser agrees to purchase from Seller, all of Seller's right, title and interest in, to and under substantially all of the assets used in the conduct of Seller's business, including, without limitation, Seller's existing portfolio of titles included on the Titles List, all inventory, all accounts receivable, intellectual property (e.g., trademarks, domain names, website code, licenses, customer and supply data, marketing collateral, manuals, e-mail addresses, etc.), accounts, books and records, prepaid expense, deposits (excluding bank accounts of Seller), archives databases, accounting history data, subscription portal, and motion picture licenses (the "**Acquired Assets**").

1618384.2  26969                                    2

3.    Excluded Assets.

(a)    Purchaser is not acquiring, and the Acquired Assets shall not include: (i) Seller's cash on hand as of the Closing Date; (ii) Seller's fixed assets, if any; or (iii) claims for relief arising under the Bankruptcy Code, including claims arising under chapter 5 of the Bankruptcy Code.

(b)    Purchaser reserves the right to exclude the purchase of any and all of Seller's assets in its sole and complete discretion. Assets that Purchaser chooses to exclude are referred to herein as the "**Excluded Assets**."

(c)    Purchaser shall not assume any liabilities of Seller except as expressly agreed to by Purchaser.

4.    Designation of Acquired Assets or Excluded Assets.

(a)    In accordance with Section 3(b) above, Ricochet has exercised its discretion to designate the assets listed in Exhibit "B" hereto as Excluded Assets. An asset listed in Exhibit "B" may not be redesignated by Ricochet as an Acquired Asset without the express written consent of the applicable Licensor. This Section 4(a) applies only to Ricochet, and is not binding upon any overbidder that is confirmed as the buyer of the Acquired Assets.

(b)    On or before 28 calendar days after the entry of the Sale Order, Purchaser may change the designation of Acquired Assets to Excluded Assets. Also on or before 28 calendar days after the entry of the Sale Order, Purchaser may add valid Jaguar titles to the Titles List, to the extent they were not already listed on the Titles List, and may designate those titles Acquired Assets.

5.    Closing Date. The transactions contemplated by this Agreement shall close on or before 30 calendar days after the entry of the Sale Order (the "**Closing Date**").

6.    Purchase Price.

(a)    In consideration of the sale, transfer, conveyance and assignment of the Acquired Assets to Purchaser, Purchaser agrees to pay Seller the following (the "**Purchase Price**"):

(i)    thirty thousand dollars ($30,000.00), to be paid on or before the Closing Date;

(ii)    subject to Section 7 below, 80% of the Collected Accounts Receivables, to be paid at the times provided for in Section 7 below; and

(iii)    25% of the net proceeds of New Accounts Receivables actually collected by Purchaser, to be paid on a quarterly basis within 30 days after the end of each quarter.

(b)    For purposes of Section 6(a)(iii), "net proceeds" means the amount of compensation paid to Purchaser under the Distribution Agreements in connection with the exhibition of Pictures after the Closing Date.[1]

(c)    The Deposit shall be credited toward the portion of the Purchase Price to be paid pursuant to Section 6(a)(ii) and (iii). The Deposit shall not be applied against the cash payment to be made pursuant to Section 6(a)(i).

(d)    If any Acquired Asset is determined to be an executory contract, Purchaser shall pay directly to the non-debtor party to that contract any cure amount required by section 365 of the Bankruptcy Code.

(e)    After the first 12 months after the Closing Date, Purchaser may deduct from the Purchase Price bank fees incurred for minimum bank balances and for wiring of funds to Seller (or its designee).

7.    Statements of Account and Payments.

(a)    Statements of Account to Licensors.    For all Collected Accounts Receivables, Purchaser shall render statements of account to Licensors (and any other parties entitled to receive such statements), and send copies of such statements to Seller (or its designee), in accordance with the Distribution Agreements.[2] Each statement shall set forth the following:

(i)    the amount of monies actually received by Purchaser from exhibition of the Picture;

(ii)    any minimum guaranty and/or expenses for which Purchaser claims reimbursement or recoupment (including amounts Seller was entitled to be reimbursed or to recoup as of the Closing Date);

(iii)    a calculation of Purchaser's (i.e., the licensee's) compensation under the Distribution Agreement;

---

[1] Generally, the net proceeds will be the gross amount of the New Accounts Receivables collected by Purchaser, less (i) minimum guaranties paid by Purchaser after the Closing Date and for which Purchaser is entitled to recoupment pursuant to the relevant Distribution Agreements, (ii) costs and expenses incurred by Purchaser in connection with the exhibition of the Picture after the Closing Date and for which Purchaser is entitled to reimbursement pursuant to the relevant Distribution Agreements. and (iii) amounts paid by Purchaser to Licensors pursuant to the relevant Distribution Agreements.

[2] For example, if a Distribution Agreement provides that the licensee shall render statements to the Licensor on a quarterly basis within 30 days after the end of each quarter, Purchaser will provide statements to the Licensor within the time and containing the information required by the Distribution Agreement.

(iv)    a calculation of the amount due to the Licensor under the Distribution Agreement for Pre-Closing Accounts Receivables; and

(v)    a calculation of the amount due to the Licensor under the Distribution Agreement for Post-Closing Accounts Receivables.

(b)    Payments by Purchaser to Seller from **Pre-Closing** Accounts Receivables. In accordance with Section 6 above, Collected Accounts Receivables relating to Pre-Closing Accounts Receivables shall be paid or retained by Purchaser as follows:

(i)    eighty percent (80%) shall be paid by Purchaser to Seller; and

(ii)    twenty percent (20%) shall be retained by Purchaser.

(c)    Payments by Purchaser to Licensors and Seller from **Post-Closing** Accounts Receivables. Without regard to when they were generated, Collected Accounts Receivables relating to Post-Closing Accounts Receivables shall be paid or retained by Purchaser as follows:

(i)    Purchaser shall pay directly to each Licensor (or its assignee) the full amount identified in Section 7(a)(v) above, even if that amount exceeds 80% of the collected amount attributable to exhibition of the Picture;

(ii)    twenty percent (20%) shall be retained by Purchaser, except that if the amount paid to the Licensor (or its assignee) under Section 7(c)(i) exceeds 80% of the collected amount attributable to exhibition of the Picture, only the balance shall be retained by Purchaser; and

(iii)    all amounts not paid to Licensors or retained by Purchaser shall be paid to Seller.

(d)    Payments to Licensors. Purchaser shall render payments to Licensors at the time and in the manner required by the Distribution Agreements.[3]

(e)    Statements of Account to Seller for Collected Accounts Receivables. For all Collected Accounts Receivables, Purchaser shall render statements of account to Seller (or its designee) on or before the first business day of each quarter following the Closing Date. Each statement shall set forth the following:

(i)    the aggregate amount of Collected Accounts Receivables received by Purchaser during the calendar quarter preceding the date of the statement;

---

[3] For example, if a Distribution Agreement provides that the licensee shall render payments at the same time it renders statements to the Licensor, Purchaser will pay the Licensor when it renders the statement required by Section 7(a).

(ii)    the aggregate amount paid by Purchaser from such Collected Accounts Receivables to or for the benefit of Licensors pursuant to Section 7(d)(i);

(iii)    the aggregate amount retained by Purchaser from such Collected Accounts Receivables pursuant to Section 7(c)(ii) and (d)(ii); and

(iv)    the aggregate amount payable to Seller pursuant to Section 7(c)(i) and (d)(iii).

If Seller (or its designee) makes no written objection to any statement of account within ninety (90) days after receiving it, it shall be deemed to be conclusive upon Seller.

(f)    Statements of Account to Seller for New Accounts Receivables.  For all New Accounts Receivables, Purchaser shall render statements of account to Seller (or its designee) at the time of payment made pursuant to Section 6(a)(iii) above.  If Seller (or its designee) makes no written objection to any statement of account within ninety (90) days after receiving it, it shall be deemed to be conclusive upon Seller.

(g)    Payments to Seller.  Purchaser shall render payments to Seller when it renders the statements of account.  In the event of any underpayment or overpayment by Purchaser to Seller, Purchaser shall adjust the same on the statement next following the discovery thereof by Purchaser.

(h)    Right to Inspect:  Not more than once per year, Seller, or one of its duly authorized representatives, shall have the right to examine, upon reasonable notice and during reasonable business hours, Purchaser's books and records of account pertaining to the Collected Accounts Receivables at the office of Purchaser's principal place of business.  Purchaser shall furnish Seller (or its representative) with such information as Seller may reasonably require for a full and complete understanding of Purchaser's records and statements of account relevant thereto.  In the event that any such inspection or audit shall reveal an underpayment to Seller of 5% or greater, then in addition to the balance due to Seller, Purchaser shall cover the actual, verifiable, third party costs of such examination/audit consistent with industry standards.

8.    Collection Costs.

(a)    With respect to the Pre-Closing Accounts Receivables and the Post-Closing Accounts Receivables, Purchaser shall be fully responsible for the cost of collection.  Such costs will not be reimbursed by Seller or the Licensors.

(b)    Purchaser, with consent of Seller (or its designee or representative), may write-off Pre-Closing Accounts Receivables and Post-Closing Accounts Receivables with appropriate evidence of attempted collections effort.  Alternatively, Purchaser, with consent of Seller, may pursue such collections through a collections agency or other third party mechanism.  In accordance with Section 8(a), absent a contrary agreement of the Parties, Purchaser shall be fully responsible for the cost of pursuing such collections.  In any event, absent an order of the Bankruptcy Court, the cost of pursuing such collections shall not reduce the amounts payable to Licensors under Section 7 above.

9.      Post-Closing Date Relationship between Purchaser and Licensors Governed by Distribution Agreements.  With respect to revenues generated from exhibition of Pictures on and after the Closing Date, the rights and obligations of Purchaser and Licensors shall be governed by the Distribution Agreements.

10.     Deposit.  The Deposit shall be non-refundable and deemed liquidated damages if the transaction fails to close, but otherwise will be applicable to the Purchase Price in accordance with Section 6(c).

11.     [Intentionally omitted.]

12.     No Representations or Warranties.   Purchaser acknowledges and agrees that, except as expressly set forth in this Agreement or any of the agreements, certificates, instruments and other documents to be executed and delivered by the Parties in connection with the transactions described herein (the "**Ancillary Agreements**"), Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets.  Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of quality, merchantability or fitness for any particular purpose as to any portion of the Acquired Assets.  Purchaser further acknowledges that Purchaser has conducted independent due diligence and investigation of all portions of the Acquired Assets and all such other matters relating to or affecting the Acquired Assets as Purchaser deemed necessary or appropriate and that in proceeding with Purchaser's acquisition of the Acquired Assets, Purchaser is doing so based solely upon such independent due diligence and investigation.  Accordingly, except as expressly set forth in this Agreement, Purchaser will accept the Acquired Assets at closing "AS IS" and "WHERE IS," with no warranty or recourse whatsoever.

13.     No Third Party Beneficiaries.   There are no third party beneficiaries to this Agreement and no party, other than Seller and Purchaser, have rights or obligations under this Agreement.

14.     Successors and Assigns.  This Agreement is binding upon and shall inure to the benefit of the Parties hereto, and their respective attorneys, agents, heirs, administrators, predecessors, successors and assigns.

15.     Further Assurances.  Each Party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate the purpose of this Agreement.

16.     Attorneys' Fees and Costs.  Each Party shall bear its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the preparation of this Agreement and seeking requisite approvals thereof.   If legal action is necessary to enforce the terms of this Agreement, the Party declared to be the prevailing party in such proceedings shall be entitled to collect his, her or its reasonable attorneys' fees and costs incurred in enforcing this Agreement.

17.     Interpretation.  This Agreement has been negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement.  Accordingly, any rule of law, statute, legal decision or common law principle that would require interpretation

of any ambiguities in this Agreement against the Party that has drafted it is not applicable, and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose and intent of this Agreement.

18.    Jurisdiction.    The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this Agreement as a core matter. In the absence of a bankruptcy filing, any action to enforce this Agreement shall be before a court of competent jurisdiction within the County of Los Angeles, California. This Agreement shall be construed pursuant to the laws of the State of California and the Bankruptcy Code. Purchaser consents to the Bankruptcy Court's entry of a final judgment in the event of such dispute.

19.    Entire Agreement.    This Agreement constitutes the entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and other writings between the Parties.    No supplement, modification, waiver or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby.

20.    Authority to Sign.    The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

21.    Counterparts.    Each Party may sign a facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

DATED: October 13, 2020          Jaguar Distribution Corp.

_____

By:    James Wong, of Armory Consulting Company
Its:    Chief Restructuring Officer

DATED: October 3, 2020          Ricochet Digital Media, LLC

_____

By:    Delisa Hudson
Its:    Authorized representative

# EXHIBIT A

# TITLES LIST

## Jaguar Distribution Corp.
### Preliminary Active Titles List

| # | Licensor | Title | Approx. Term. | Notes |
|---|----------|-------|---------------|-------|
| 1 | A24 International, LLC | It Comes At Night | 8/30/2022 | |
| 2 | ALCHEMY | Meet the Patels | 12/13/2020 | |
| 3 | Altitude Film Sales Limited | Eric Clapton: Life in 12 Bars | 1/1/2023 | |
| 4 | Altitude Film Sales Limited | Boy Downstairs, The | 2/8/2023 | |
| 5 | Altitude Film Sales Limited | Dead in a Week (Or Your Money Back) | 8/30/2023 | |
| 6 | Altitude Film Sales Limited | Mary and the Witch's Flower | 12/4/2023 | |
| 7 | Archimedia Productions Ltd | Palio | 1/21/2021 | |
| 8 | Bloom | Bel Canto | 7/2/23 | 1 |
| 9 | Bloom Media | Sea of Trees, The | 9/8/2021 | |
| 10 | Bloom Media | Unlocked | 5/18/2022 | |
| 11 | Bloom Media | Suburbicon | 10/26/2022 | |
| 12 | Bloom Media | Dragged Across Concrete | 12/30/2023 | |
| 13 | Bloom Media | Informer, The | 9/30/24 | |
| 14 | Blue Fox Entertainment 2 LLC | Elephant and The Butterfly, The (French) | 9/30/2023 | |
| 15 | Blumhouse International, Inc. | Gift, The | 12/1/2020 | |
| 16 | Bros The Film Ltd | Bros: After the Screaming Stops | 10/30/2023 | |
| 17 | CELSIUS ENTERTAINMENT LTD. | Bookshop, The | 5/17/2023 | |
| 18 | Charades | Mirai (Japanese animation) | 11/30/2023 | |
| 19 | Cinema Management Group, LLC | Searching For Ingmar Berman (doc) | 8/30/2023 | |
| 20 | Cinemagic | Grace and Goliath | 12/1/2023 | |
| 21 | Cinemagic | Trainee Filmmakers: Grace and Goliath Behind- the-Scenes | 12/1/2023 | |
| 22 | Cinetic Media | Abacus: Small Enough to Jail | 3/25/2023 | |
| 23 | Content Int'l Film & TV Ltd | Heartworn Highways Revisited | 10/16/2020 | |
| 24 | Content Int'l Film & TV Ltd | Steve Mcqueen: the Man and Le Mans | 10/31/2020 | |
| 25 | Content Int'l Film & TV Ltd | Diabolical, The | 12/4/2020 | |
| 26 | Content Int'l Film & TV Ltd | Newcomer | 3/24/2021 | |
| 27 | Content Int'l Film & TV Ltd | 400 Days | 3/31/2021 | |
| 28 | Content Int'l Film & TV Ltd | Janis: Little Girl Blue | 3/31/2021 | |
| 29 | Content Int'l Film & TV Ltd | Golden Years | 9/27/2021 | |
| 30 | Content Int'l Film & TV Ltd | Breaking the Bank | 12/5/2021 | |
| 31 | Content Int'l Film & TV Ltd | Book of Love, The | 1/11/2022 | |
| 32 | Content Int'l Film & TV Ltd | Don't Knock Twice | 3/22/2022 | |
| 33 | Content Int'l Film & TV Ltd | Youth in Oregon | 5/1/2022 | |
| 34 | Content Int'l Film & TV Ltd | 1 Mile to You (fka Life At These Speeds) | 5/23/2022 | |
| 35 | Content Int'l Film & TV Ltd | Whitney Can I Be Me | 6/28/2022 | |
| 36 | Content Int'l Film & TV Ltd | Manolo: The Boy Who Made Shoes For Lizards | 11/30/2022 | |
| 37 | Content Int'l Film & TV Ltd | Beside Bowie: The Mick Ronson Story | 2/1/2023 | |
| 38 | Content Int'l Film & TV Ltd | Nothing Like A Dame (previously known as Tea With Dames) | 6/8/2023 | |
| 39 | Content Int'l Film & TV Ltd | Actor Prepares, An | 12/1/2023 | |
| 40 | Content Media Corporation Int'l Ltd | American Masters; Mike Nichols | | 2 |
| 41 | Content Media Corporation Int'l Ltd | Armin Only Embrace (90's highlight version) | | 2 |
| 42 | Content Media Corporation Int'l Ltd | Broken: The Incredible Story of Brangelina | | 2 |
| 43 | Content Media Corporation Int'l Ltd | Cut From A Different Cloth | | 2 |
| 44 | Content Media Corporation Int'l Ltd | El Chapo & Sean Penn: Bungle in the Jungle | | 2 |
| 45 | Content Media Corporation Int'l Ltd | Harry and Snowman | | 2 |
| 46 | Content Media Corporation Int'l Ltd | Jack Taylor (Episodes 1-9) | | 2 |
| 47 | Content Media Corporation Int'l Ltd | Line of Duty Season 1, 2, 3 | | 2 |

# Jaguar Distribution Corp.

## Preliminary Active Titles List

| # | Licensor | Title | Approx. Term. | Notes |
|---|----------|-------|---------------|-------|
| 48 | Content Media Corporation Int'l Ltd | Maestro | | 2 |
| 49 | Content Media Corporation Int'l Ltd | Marilyn Monroe Declassified | | 2 |
| 50 | Content Media Corporation Int'l Ltd | Moving On (Episodes 1-45) | | 2 |
| 51 | Content Media Corporation Int'l Ltd | Newman | | 2 |
| 52 | Content Media Corporation Int'l Ltd | Now More Than Ever:  The History of Chicago | | 2 |
| 53 | Content Media Corporation Int'l Ltd | Rich & Acquitted | | 2 |
| 54 | Content Media Corporation Int'l Ltd | Rumble & Hum (10 episodes approximately 60 minutes each) | | 2 |
| 55 | Content Media Corporation Int'l Ltd | Secret Agent, The | | 2 |
| 56 | Content Media Corporation Int'l Ltd | Style Queens (Season 1) | | 2 |
| 57 | Content Media Corporation Int'l Ltd | Too Young To Die | | 2 |
| 58 | Content Media Corporation Int'l Ltd | Witness, The | | 2 |
| 59 | Dogwoof / Submarine | Price of Everything, The (doc) | 9/30/2023 | 3 |
| 60 | Dogwoof Ltd | Bombshell:  The Hedy Lamar Story | 2/19/2021 | |
| 61 | Dogwoof Ltd | Westwood: Punk, Icon, Activist | 7/15/2021 | |
| 62 | Dogwoof Ltd | Weiner | 1/15/2022 | |
| 63 | Dogwoof Ltd | Mountain (doc) | 10/30/2023 | |
| 64 | Dogwoof Ltd | Bobby Robson:  More Than A Manager | 11/30/2023 | |
| 65 | Electric Distribution | Book of Love, the (domestic) | 1/11/2022 | |
| 66 | Electric Distribution | Outpost, The | 9/27/2022 | |
| 67 | Eleven Foot Pole LLC | Where to Invade Next (dom) | 12/30/2026 | |
| 68 | Embankment Films Limited | Robot Overlords (Our Robot Overlords) | 3/1/2021 | |
| 69 | Embankment Films Limited | Breathe | 9/5/23 | 1 |
| 70 | Embankment Films Limited | Untouchable (fka Citizen Harvey) (doc) | 8/1/24 | 1 |
| 71 | Exclusive Films International Limited | Green Inferno, The | 12/15/2020 | |
| 72 | EXCLUSIVE FILMS INT'L LIMITED | Pele: Birth of a Legend | 10/14/21 | 1 |
| 73 | FILM BRIDGE INT'L. | Misconduct | 3/28/21 | 1 |
| 74 | FilmRise | Boy Downstairs, The (domestic) | 2/8/2023 | |
| 75 | Fortitude International | Angel of Mine (English Remake) | 9/29/24 | |
| 76 | Front Row Filmed Entertainment | Citizenfour | 1/31/2021 | |
| 77 | Front Row Filmed Entertainment | Tough Luck (season 1) | 6/8/2022 | |
| 78 | Front Row Filmed Entertainment | Tough Luck (season 2) | 6/8/2022 | |
| 79 | Front Row Filmed Entertainment | I Am Not Your Negro | 6/20/2022 | |
| 80 | Goldcrest Films | All Dogs Go to Heaven | 8/10/2022 | |
| 81 | Goldcrest Films | Slumber | 2/5/2023 | |
| 82 | Goldcrest Films | Cold Blood Legacy (fka The Last Step) | 3/30/2024 | |
| 83 | Great Point Media Limited | Party, The | 10/29/2022 | |
| 84 | Great Point Media Limited | Jonathan | 12/14/23 | |
| 85 | Gutta Percha Productions, LLC | Tommy's Honour | 4/19/2022 | |
| 86 | Hanway Films Ltd | Guest, The | 9/3/2020 | |
| 87 | Hanway Films Ltd | Nowhere Boy | 10/31/2020 | |
| 88 | Hanway Films Ltd | Every Thing Will Be Fine | 11/1/2020 | |
| 89 | Hanway Films Ltd | Slow West | 6/30/2021 | |
| 90 | Hanway Films Ltd | Swallows and Amazons | 7/5/2021 | |
| 91 | Hanway Films Ltd | Brooklyn | 9/18/2021 | |
| 92 | Hanway Films Ltd | Anomalisa | 12/31/2021 | |
| 93 | Hanway Films Ltd | Seymour: An Introduction | 1/5/2022 | |
| 94 | Hanway Films Ltd | Peggy Guggenheim: Art Addict | 1/6/2022 | |
| 95 | Hanway Films Ltd | Tale of Tales | 1/22/2022 | |

# Jaguar Distribution Corp.
## Preliminary Active Titles List

| #   | Licensor                              | Title                                             | Approx. Term. | Notes |
|-----|---------------------------------------|---------------------------------------------------|---------------|-------|
| 96  | Hanway Films Ltd                      | High-Rise                                         | 1/28/2022     |       |
| 97  | Hanway Films Ltd                      | Last Days in the Desert                           | 4/20/2022     |       |
| 98  | Hanway Films Ltd                      | 11 Minutes                                        | 4/29/2022     |       |
| 99  | Hanway Films Ltd                      | Being AP                                          | 10/1/2022     |       |
| 100 | Hanway Films Ltd                      | Summer of '92                                     | 11/5/2022     |       |
| 101 | Hanway Films Ltd                      | Killing of a Sacred Deer, the                     | 5/30/2023     |       |
| 102 | Hanway Films Ltd                      | Limehouse Golem, The                              | 9/15/2023     |       |
| 103 | Hanway Films Ltd                      | Mary Shelley                                      | 5/13/2024     |       |
| 104 | HANWAY FILMS LTD.                     | Final Portrait                                    | 12/16/20      | 1     |
| 105 | HANWAY FILMS LTD.                     | Their Finest                                      | 10/18/22      | 1     |
| 106 | Highland Film Group                   | Extraction (buy out)                              | 12/11/2020    |       |
| 107 | Honeytrap Ltd                         | Honeytrap                                         | 2/24/2021     |       |
| 108 | Independent Film Sales, Ltd           | My Pure Land                                      | 11/26/2020    |       |
| 109 | Independent Film Sales, Ltd           | Time of Their Lives, The                          | 12/21/2020    |       |
| 110 | Independent Film Sales, Ltd           | Jawbone                                           | 1/23/2021     |       |
| 111 | Independent Film Sales, Ltd           | Kaleidoscope                                      | 2/28/2021     |       |
| 112 | Independent Film Sales, Ltd           | McKellen:  Playing the Part                       | 6/8/2021      |       |
| 113 | Independent Film Sales, Ltd           | On the Road                                       | 11/1/2021     |       |
| 114 | Independent Film Sales, Ltd           | Escape, The                                       | 6/15/2023     |       |
| 115 | Independent Film Sales, Ltd           | VS.                                               | 7/2/2023      |       |
| 116 | Independent Film Sales, Ltd           | Little Woods                                      | 11/30/2023    |       |
| 117 | K5 Media Group GMBH                   | Land of Mine                                      | 1/30/2022     |       |
| 118 | Kaleidoscope Film Distribution Limited| Founders, The                                     | 8/11/2021     |       |
| 119 | Kaleidoscope Film Distribution Limited| Misery Loves Comedy                               | 9/30/2021     |       |
| 120 | Kaleidoscope Film Distribution Limited| I Am Duran (doc/sport)                            | 6/30/2024     |       |
| 121 | Kaleidoscope Film Distribution Limited| Land of Sometimes, The (animation)                | 7/1/2025      |       |
| 122 | Kew                                   | Backfired                                         | 12/9/22       | 1     |
| 123 | Kew                                   | Engineer Imagines                                 | 8/28/22       | 1     |
| 124 | Kew Media Film                        | Line of Duty (season 5)                           | 8/14/22       |       |
| 125 | Kew Media Film                        | Soufra (doc) (Arabic wt English subs)             | 7/2/2023      |       |
| 126 | Kew Media Film                        | Cosplay Universe (doc)                            | 12/30/2023    |       |
| 127 | Kew Media Film                        | Margaret Atwood                                   | 3/1/24        |       |
| 128 | Kew Media Film                        | Cleanin Up the Town                               | 3/1/24        |       |
| 129 | Kew Media Film                        | Cold Call                                         | 3/1/24        |       |
| 130 | Kew Media Film                        | Churchill and the Movie Mogul                     | 3/1/24        |       |
| 131 | Kew Media Film                        | Own the Sky                                       | 3/1/24        |       |
| 132 | Kew Media Film                        | Prince Phillip                                    | 3/1/24        |       |
| 133 | Kew Media Film                        | Worzel Gummidge                                   | 3/1/24        |       |
| 134 | Kew Media Film                        | Laurel Canyon                                     | 4/30/25       |       |
| 135 | Kew Media International Limited Film   | Dealt                                             | 8/2/2023      |       |
| 136 | Kew Media International Limited Film   | Agatha and the Truth of Murder (TV Movie) & FF    | 10/30/2023    |       |
| 137 | Kew Media International Limited Film   | Chuck Berry (doc/music)                           | 6/30/2024     |       |
| 138 | Kew Media International Limited Film   | Chasing Perfect                                   | 8/30/2024     |       |
| 139 | Kew Media TV Deal                     | Monochrome: Black, White & Blue                   | 10/16/2020    |       |
| 140 | Kew Media TV Deal                     | Dream the Impossible                              | 12/13/2020    |       |
| 141 | Kew Media TV Deal                     | Le Ride                                           | 3/19/2021     |       |
| 142 | Kew Media TV Deal                     | Rolling Stone Magazine:  Stories from the Edge    | 5/2/2021      |       |
| 143 | Kew Media TV Deal                     | Princess Diana: A Life After Death                | 5/30/2021     |       |
| 144 | Kew Media TV Deal                     | Harry & Meghan: A Very Modern Romance             | 6/28/2021     |       |
| 145 | Kew Media TV Deal                     | Frankie Drake Mysteries                           | 7/12/2021     |       |

## Jaguar Distribution Corp.
### Preliminary Active Titles List

| # | Licensor | Title | Approx. Term. | Notes |
|---|---|---|---|---|
| 146 | Kew Media TV Deal | Crawford | 7/18/2021 | |
| 147 | Kew Media TV Deal | Rich & Acquitted | 8/2/2021 | |
| 148 | Kew Media TV Deal | 4% - Film's Gender Problem, The | 8/30/2021 | |
| 149 | Kew Media TV Deal | Truth Is in the Stars, The | 9/18/2021 | |
| 150 | Kew Media TV Deal | All the Wild Horses | 11/1/2021 | |
| 151 | Kew Media TV Deal | Bletchley Circle: San Francisco | 1/18/2022 | |
| 152 | Kew Media TV Deal | Frankie Drake Mysteries Season 2 | 12/31/2022 | |
| 153 | Kew Media TV Deal | Closing Gambit: 1978 Korchnoi Versus Karpov and the Kremlin (doc) | 8/2/2023 | |
| 154 | Kew Media TV Deal | An Engineer Imagines | 8/30/2024 | |
| 155 | KINOLOGY | Mustang | 11/19/2020 | |
| 156 | Legacy Rights Ltd. | Fisherman's Friends | 3/1/24 | 1 |
| 157 | Magnolia Pictures | Harry Benson:  Shoot First | 1/2/2022 | |
| 158 | MAGNOLIA PICTURES | I Am Not Your Negro (usa Only) | 4/1/2022 | |
| 159 | MAGNOLIA PICTURES | Gospel According to Andre, The | 5/4/2023 | |
| 160 | Mainsail, LLC | It Had to Be You (2016) | 11/22/2021 | |
| 161 | MAINSAIL, LLC | Pretend One, The | 3/27/2023 | |
| 162 | METFILM SALES | Last Breath | 8/13/24 | |
| 163 | Metfilm Sales | Heat, The:  A Kitchen (R)evolution | 9/13/24 | |
| 164 | Mongrel International | Date For Mad Mary, A | 5/18/2022 | |
| 165 | Mongrel International | Maudie | 6/21/22 | 1 |
| 166 | MYRIAD PICTURES, INC. | Auggie | 9/24/22 | |
| 167 | MYRIAD PICTURES, INC. | #Roxy | 7/2/2023 | |
| 168 | MYRIAD PICTURES, INC. | Fast Color | 9/13/24 | |
| 169 | NUMBER 9 FILMS (CHESIL) LTD | On Chesil Beach | 12/7/23 | 1 |
| 170 | Protagonist Pictures Ltd | Love & Friendship | 5/26/2021 | |
| 171 | Protagonist Pictures Ltd | Lady Macbeth | 5/22/2022 | |
| 172 | Protagonist Pictures Ltd | Beast | 6/11/2023 | |
| 173 | PROTAGONIST PICTURES LTD. | Finding Your Feet | 2/1/23 | 1 |
| 174 | Rocket Science | At Eternity's Gate | 8/30/23 | 1 |
| 175 | Rogue Productions [SD] | By the Balls | 10/30/24 | |
| 176 | SAMUEL GOLDWYN FILMS | Youth in Oregon (domestic) | 10/1/2021 | |
| 177 | SC FILMS INTERNATIONAL LTD | Monkey King: Hero Is Back (international) | 8/3/2021 | |
| 178 | SC FILMS INTERNATIONAL LTD | Air Bound | 5/22/2022 | |
| 179 | SC FILMS INTERNATIONAL LTD | Realive | 7/24/2022 | |
| 180 | SC FILMS INTERNATIONAL LTD | Charming (animation) | 8/2/2023 | |
| 181 | SC FILMS INTERNATIONAL LTD | Gnome Alone | 12/1/2023 | |
| 182 | SEVILLE PICTURES | Elephant Song | 10/1/2020 | |
| 183 | SEVILLE PICTURES | Cut Snake | 11/30/2020 | |
| 184 | SEVILLE PICTURES | Ma Ma | 7/31/2021 | |
| 185 | SEVILLE PICTURES | Ashram, The | 5/11/2023 | |
| 186 | Sierra Affinity LLC | Stockholm | 1/30/2024 | |
| 187 | Studio100 Media | Blinky Bill the Movie | 5/19/2021 | |
| 188 | Studio100 Media | Maya the Bee: The Honey Games | 5/9/2023 | |
| 189 | Studio100 Media | Princess Emmy (animation) | 5/31/2024 | |
| 190 | Submarine Entertainment | Pick of the Litter | 8/31/2023 | |
| 191 | Submarine Entertainment | Price of Everything, The (US ONLY) | 9/30/2023 | |
| 192 | Swonderful Right Ltd | American In Paris - The Musical, An | 8/30/2023 | |
| 193 | Swonderful Right Ltd | Red (musical play) | 8/30/2023 | |

# Jaguar Distribution Corp.
## Preliminary Active Titles List

| # | Licensor | Title | Approx. Term. | Notes |
|---|----------|-------|---------------|-------|
| 194 | Swonderful Right Ltd | Wind in the Willows, The (musical play) | 3/1/2024 | 3 |
| 195 | Swonderful Right Ltd | From Here to Eternity (musical play) | 3/1/2024 | |
| 196 | Terra Mater Factual Studios GMBH | Brothers of the Wind | 10/17/2021 | |
| 197 | Two For Joy Productions | Two For Joy | 10/30/2023 | |
| 198 | Viva Pictures Distribution LLC | Monkey King: Hero Is Back (domestic) | 8/3/2021 | |
| 199 | Viva Pictures Distribution LLC | A.C.O.R.N.S.: Operation Crack Down (domestic title for Get Squirrely) | 10/3/2021 | |
| 200 | West End Films | Learning to Drive | 11/30/2020 | |
| 201 | Whiston Pictures Limited | Make Us Dream (doc/sport) | 12/30/2023 | |
| 202 | WORKS, THE | Prime Minister, The | 2/28/2022 | |
| 203 | Works, The | California Typewriter (Net Deal) | 3/1/2022 | |
| 204 | WW Dance LLC | Restless Creature: Wendy Whelan | 2/2/2023 | |

Approximate termination dates: subject to each title's distribution agreement.

**Notes:**

1    Additional titles.
2    Additional Kew/Content titles, subject to confirmation by licensor.
3    Previously list this title twice.

# EXHIBIT B

# EXCLUDED ASSETS

In accordance with Section 3(b) of the Second Amended Asset Purchase Agreement (the "**Agreement**") dated October 13, 2020, by and between Jaguar Distribution Corp. ("**Jaguar**"), on the one hand, and Ricochet Digital Media, LLC ("**Ricochet**"), on the other hand, the following assets are designated by Ricochet as Excluded Assets (as that term is used in the Agreement):

All of Seller's right, title and interest in, to and under the following:

1.  Any and all distribution agreements and related agreements and contracts between Jaguar and Celsius Entertainment Ltd. ("**Celsius**"), including but not limited to agreements and contracts under which Jaguar obtained the right to license and distribute the following motion picture(s) or television program(s):

    (a)    Any Day Now;
    (b)    The Bookshop;
    (c)    The First Time;
    (d)    The Last Bus; and
    (e)    Je T'aime Paris.

2.  Any and all distribution agreements and related agreements and contracts between Jaguar and Embankment Films Limited ("**Embankment**"), including but not limited to agreements and contracts under which Jaguar obtained the right to license and distribute the following motion picture(s) or television program(s):

    (a)    Breathe;
    (b)    Diana;
    (c)    Robot Overlords (aka Our Robot Overlords);
    (d)    Le Week-End; and
    (e)    Untouchable.

3.  Any and all distribution agreements and related agreements and contracts between Jaguar and Studio 100 Film GmbH ("**Studio 100**"), including but not limited to agreements and contracts under which Jaguar obtained the right to license and distribute the following motion picture(s) or television program(s):

    (a)    Blinky Bill the Movie;
    (b)    Maya the Bee Movie;
    (c)    Maya the Bee Movie 2 (aka Maya the Bee: The Honey Games); and
    (d)    Princess Emmy Movie.